# UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF OHIO

In Re: )
) **JUDGE RICHARD L. SPEER**
Stacee Violanti )
) Case No. 08-33329
    Debtor(s) )
)

## DECISION AND ORDER

This cause comes before the Court after a Hearing on the Motion of the United States Trustee to Dismiss Case for Abuse pursuant to 11 U.S.C. § 707(b)(1) and 11 U.S.C. § 707(b)(3). At the conclusion of the Hearing, the Court ordered the Debtor to submit updated financial information, affording then the United States Trustee the opportunity to file a response to the information provided by the Debtor. The Court has now received these materials, and finds this matter is ripe for resolution. Based upon an examination of the evidence, together with the arguments made by the Parties, the Court finds that the Motion of the United States Trustee to Dismiss has Merit.

## LEGAL BACKGROUND

In June of 2008, the Debtor, Stacee Violanti, sought relief in this Court under Chapter 7 of the United States Bankruptcy Code. "In a Chapter 7 proceeding, an individual debtor receives an immediate unconditional discharge of personal liabilities for debts in exchange for the liquidation of all non-exempt assets." *Schultz v. U.S.*, 529 F.3d 343, 346 (6th Cir. 2008). It is well-established, however, that a debtor has no constitutionally protected right to receive a discharge in bankruptcy. *Grogan v. Garner*, 498 U.S. 279, 286, 111 S.Ct. 654, 659, 112 L.Ed.2d 755 (1991); *U.S. v. Kras*, 409 U.S. 434, 445-446, 93 S.Ct. 631, 34 L.Ed.2d 626 (1973). Bankruptcy is, instead, a legislatively created benefit that Congress may withhold at its discretion. To that end, Congress has prescribed

**In re: Stacee Violanti**
**Case No. 08-33329**

conditions under which a debtor's bankruptcy case must be dismissed. *In re AC Rentals, Inc.*, 325 B.R. 339 (Table) (10th Cir. B.A.P. 2005). When, as here, a debtor seeks relief under Chapter 7 of the Bankruptcy Code, the conditions mandating dismissal are set forth in § 707.

In this case, the Motion of the United States Trustee to Dismiss is brought pursuant to paragraphs (b)(1) and (b)(3) of § 707. These two provisions, enacted as part of the Congressional Act known as BAPCPA,[1] work together, allowing a court to dismiss a debtor's case when it is determined that granting relief to the debtor would constitute an abuse of the provisions of Chapter 7. To effectuate the dismissal of a case for abuse, § 707(b)(1) first sets forth a foundation, providing:

> (b)(1) After notice and a hearing, the court, on its own motion or on a motion by the United States trustee, trustee (or bankruptcy administrator, if any), or any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts, or, with the debtor's consent, convert such a case to a case under chapter 11 or 13 of this title, if it finds that the granting of relief would be an abuse of the provisions of this chapter.

Section 707(b)(3) then sets forth a methodology by which to assess the existence of abuse for purposes of paragraph (b)(1), by providing:

> (3) In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter in a case in which the presumption in subparagraph (A)(i) of such paragraph does not arise or is rebutted, the court shall consider–
>
> (A) whether the debtor filed the petition in bad faith; or
>
> (B) the totality of the circumstances (including whether the debtor seeks to reject a personal services contract and the financial need for

---

[1] Bankruptcy Abuse Prevention and Consumer Protection Act, effective October 17, 2005. Public Law 109-8, 119 Stat. 23.

Page 2

In re: Stacee Violanti
Case No. 08-33329

such rejection as sought by the debtor) of the debtor's financial situation demonstrates abuse.

An action brought to dismiss a case under § 707(b)(1) and § 707(b)(3) thus may be predicated on two grounds: (1) bad faith; and (2) the totality of the circumstances. It is recognized that these grounds for dismissal are best understood as simply a codification of pre-BAPCPA case law. *In re Wright*, 364 B.R. 640, 643 (Bankr. N.D.Ohio 2007); *In re Mestemaker*, 359 B.R. 849 (Bankr.N.D.Ohio 2007). For this purpose, the facts, as now outlined, were not materially disputed.

## FACTS

The Debtor, Stacee Violanti, is a single mother of three children, ages, 7, 10, and 21. (Doc. No. 21). The Debtor is only responsible for providing support to the two youngest of her children. It was also brought to the Court's attention that the Debtor does not receive any financial support from the children's father.

The Debtor is employed as an x-ray technician, a position she has held for 16 years. *Id.* The Debtor also works a second job. Through her employment, the Debtor receives a base salary of $7,880.59 per month. *Id.* The Debtor also presently receives overtime pay of $1,043.53 per month, although this amount is not assured and can vary each month.

The Debtor's present level of income is consistent with past years, with the Debtor reporting that in 2007 she had an annual salary of $93,974.00, and that for the 2006 calender year she earned $102,355.00. In the past, the Debtor has also made overpayments on her tax obligations, most recently receiving a refund of approximately $6,000.00 for the 2007 tax year. After accounting for deductions to her salary, including taxes and a $262.32 deduction to repay a loan taken against a retirement account, the Debtor reports a net monthly income of $5,908.60. *Id.*

Page 3

**In re: Stacee Violanti**
**Case No. 08-33329**

Against her income, the Debtor reported monthly expenses of $5,984.47, leaving the Debtor with a deficit in her monthly budget of $75.87. *Id.* Included in this calculation were the following expenses: a mortgage payment of $2,375.81; a $100.00 payment for a home equity line of credit; an auto payment of $595.00; an additional expense for transportation of $450.00, representing operating costs; and an entertainment expense of $150.00. *Id.*

At the time she sought relief in this Court, the Debtor was insolvent, having assets totaling $295,382.06 in value versus liabilities totaling $415,134.54. *Id.* The Debtor's unsecured liabilities, totaling $77,868.86, stem entirely from debt incurred on credit-card accounts. The Debtor's primary assets consist of her residence, which she valued at $260,000.00, and her vehicle, a 2008 Honda Pilot, which the Debtor assigned a value of $32,000.00. *Id.* Both these assets, as detailed below, are fully encumbered.

The Debtor's 2008 vehicle is subject to a lien of $32,000.00, which was incurred in March of 2008. The Debtor's residence is subject to three liens: a first mortgage in the amount of $260,000.00; a second mortgage in the amount of $50,792.87; and a home equity loan in the amount of $5,905.17. The obligations attendant to the first and second mortgages were incurred in the middle of 2007, shortly after the Debtor sold her former residence for $91,000.00, netting in the transaction approximately $13,000.00. In her petition, the Debtor set forth that it was her intention to reaffirm on each of these secured obligations. (Doc. No. 1).

## DISCUSSION

This matter is before the Court on the Motion of the United States Trustee (hereinafter "UST") to Dismiss pursuant to 11 U.S.C. § 707(b)(1) and § 707(b)(3). In seeking to have the Debtor's bankruptcy case dismissed under these provisions, the UST set forth that the basis for its motion is "that the debtor has the ability to repay her debts out of her future income." (Doc. No. 9).

Page 4

In re: Stacee Violanti
Case No. 08-33329

Matters, such as this, concerning the dismissal of a case, which affects both the ability of a debtor to receive a discharge and directly affects the creditor-debtor relationship, are deemed to be core proceedings pursuant to 28 U.S.C. §§ 157(b)(2)(J)/(O), thereby conferring jurisdiction on the Court to enter final orders and judgments. 28 U.S.C. § 157(b)(1).

It has long been a policy goal of the bankruptcy law to afford a debtor a fresh-start. At the same time, a fresh-start does not mean that a debtor should be afforded a head-start. It has, thus, also been a policy goal of bankruptcy to encourage debtors to repay their debts when they have the ability to do so. In furtherance of this latter policy aim, it is well-established that a prime and often dispositive consideration regarding the dismissal of a case for abuse, particularly under the totality of the circumstances standard of § 707(b)(3)(B), will center on the point made by the UST: Whether a debtor has the ability to repay their debts out of future income? *In re Krohn*, 886 F.2d 123, 126 (6th Cir. 1989).

A frequently utilized measure, when determining whether a debtor has the ability to repay their debts, is to ascertain whether, under a hypothetical Chapter 13 repayment plan, the debtor could repay a meaningful percentage of his or her unsecured debts. *Behlke v. Eisen (In re Behlke)*, 358 F.3d 429, 435 (6th Cir. 2004). This determination is made by reference to the amount of "disposable income" the debtor has available to pay into the plan. In turn, the term "disposable income" is defined, generally, as that income received by a debtor which is not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor. 11 U.S.C. § 1325(b)(2); *In re Pier*, 310 B.R. 347, 353 (Bankr. N.D.Ohio 2004).

According to her budgetary figures, the Debtor has a slight deficit in her monthly budget. Therefore, when viewed solely from the perspective of the income and expense figures provided by the Debtor, the Court would agree that her ability to repay her creditors is constrained, if not completely lacking. Yet, whether a debtor has the ability to make an effort to repay their debts is a

Page 5

**In re: Stacee Violanti**
**Case No. 08-33329**

factual question for the Court to resolve, and is hence not entirely dependent on the financial figures provided by a debtor. *In re Gonzalez*, 378 B.R. 168, 173 (Bankr. N.D.Ohio 2007). Rather, "in its role as the trier-of-fact, the Court is under a duty to scrutinize a debtor's expenses, and make downward adjustments where necessary, so as to ensure that the debtor's expenses are reasonable. Similarly, when determining a debtor's 'disposable income,' a court may impute income to the debtor when it would be equitable to do so – *e.g.*, when the debtor is voluntarily underemployed." *Id.*

Based upon the Court's authority to make adjustments to her budgetary figures, the UST objected to both the income and expense figures put forth by the Debtor. First, the UST put forth that additional income should be imputed to the Debtor, as derived from these two sources: (1) future tax refunds; and (2) through the reallocation of funds away from the repayment of a loan taken against a retirement account. Second, the UST took issue with the scope of the Debtor's monthly expenses, particularly, the Debtor's expenditures for housing and transportation. (Doc. No. 9). Explaining first the matter of the Debtor's tax refunds, each of the points made by the UST regarding the Debtor's budgetary figures is consistent with past decisions of this Court.

Section 707(b)(3)(B) directs a court to look to the debtor's "financial situation" when evaluating the totality of the circumstances for abuse. An accurate assessment of a debtor's financial condition is thus key when approaching an action brought under § 707(b)(3). Based on this, it has been the policy of this Court to look unfavorably on any debtor who seeks to sequester their financial resources from his or her creditors based upon a nonexistent expenditure. *In re Masella*, 373 B.R. 514, 519 (Bankr. N.D.Ohio 2007). A tax refund fits this bill, as it exists on account of funds held by a taxing authority for which there exists no corresponding liability.

Page 6

In re: Stacee Violanti
Case No. 08-33329

Resultantly, on repeated occasions, this Court has held that, in a § 707(b) proceeding, anticipated tax refunds are to be counted as a source of income.[2] To be sure, the Debtor, as she pointed out, may not receive tax refunds in the future, much less a refund of $6,000.00 as occurred for the 2007 tax year. But this misses the point. To the extent that the Debtor receives any tax refund, her financial figures are skewed as she is having withheld from her salary, funds beyond those which are necessary to satisfy her tax liability.

Similarly, applying Sixth Circuit precedent, this Court has stressed that, for purposes of § 707(b)(3), it is normally unfair to allow a debtor to commit a part of their earnings to the payment of their own retirement fund while at the same time paying their creditors less than a 100% dividend. *In re Gonzalez*, 378 B.R. at 174. Although this tenet is not absolute, and may be subordinated where unique circumstances so warrant, nothing of substance was put before the Court which would call for allowing the Debtor to exclude from her "disposable income" those funds now directed to repay a loan on a retirement account.

Of primary importance, the Debtor is young and, from all appearance, in good health. There is, therefore, no reason to conclude that the loan repayment now being made by the Debtor on her retirement account is necessary for her immediate health and welfare. In this way, retirement contributions have been permitted in the § 707(b)(3) context, but only where, based upon considerations such as a debtor's age and expected date of retirement, a contrary decision would directly jeopardize a debtor's ability to support themselves in retirement. *Accord Hebbring v. U.S. Trustee*, 463 F.3d 902, 907 (9th Cir. 2006). ("Congress's decision not to categorically exclude any

---

[2] *See, e.g., In re Gonzalez*, 378 B.R. 168 (Bankr. N.D.Ohio 2007); *In re Blankenship*, Ch. 7 Case No. 08-30226, 2008 WL 2076736 (Bankr. N.D.Ohio 2008); *In re Reimer*, Ch. 7 Case No. 07-32787, 2008 WL 495537 (Bankr. N.D.Ohio 2008).

Page 7

specific expense, including retirement contributions, from being considered reasonably necessary is probative of its intent.").

Besides the need to impute additional income to the Debtor, the monthly expenses set forth by the Debtor are excessive. Most noticeable are the Debtor's itemized expenditures for housing and transportation which, when considering the size of the Debtor's salary – for at least three years the Debtor has earned around $100,000.00 annually – dissipate an impermissible percentage of her income.

For housing, the Debtor set forth that, from her net monthly salary of $5,908.60, she allocates almost $2,500.00 per month to maintain her residence. This payment, which does not even include expenses for utilities and general upkeep, amounts to more than 40% of the Debtor's net monthly salary. While necessary housing expenses are allowed as a matter of course, this is excessive on a couple of different levels.

First, while not necessarily a dispositive consideration, the Debtor's monthly allocation for her housing is more than three times the amount allowed under the 'means test' calculation, applicable when determining the existence of abuse according to § 707(b)(2).[3] Second, there is a disconnect between the picture the Debtor attempts to paint of frugality and the need to devote $2,500.00 per month to maintain herself and two children in a home valued at more than a quarter of a million dollars. In this regard, the Debtor's recent history demonstrates the extravagance of her housing expense. In particular, the Debtor acknowledged that her former residence, which was

---

[3] For a household of three, and for a case filed in June of 2008, the 'means test' calculation of 11 U.S.C. § 707(b)(2) allowed a debtor to claim a mortgage/rent expense of $784.00. http://www.usdoj.gov/ust/eo/bapcpa/20080317/bci_data/housing_charts/irs_housing_charts_OH.htm.

Page 8

In re: Stacee Violanti
Case No. 08-33329

valued at $91,000.00, and for which a much lower monthly allocation was needed, had sufficiently suited her needs.

These same points also hold true for the Debtor's transportation costs. According to the Debtor, her monthly budget for transportation totals $1,045.00, consisting of a debt payment of $595.00 and then operating costs of $450.00. Again, this is appreciably greater than what is permissible under the 'means test' calculation of § 707(b)(2) which, at the time the Debtor filed for bankruptcy, permitted monthly transportation costs of up to $672.00.[4] The transportation expense is also a significant drain on the Debtor's net income, thus depriving the Debtor's household budget of resources that could otherwise be used to pay unsecured creditors.

Under these circumstances, the burden is on the Debtor to show the necessity of the expense, such as by putting forth evidence that her large transportation expense is directly related to a remunerative purpose or that less expensive transportation alternatives are not available. No evidence of this character, however, was provided, with the Debtor only putting forth the generic statement that she needs reliable transportation for work. Query: do reliable vehicles for transportation now cost at least $32,000.00?

For these reasons, a portion of the resources the Debtor now expends for her residence and transportation may be viewed as more a luxury than a necessity. And as such, under the definition of "disposable income," a portion of the Debtor's monthly expenditures for housing and transportation cannot be construed as reasonably necessary to be expended for the maintenance or support of the Debtor or her dependents. The impropriety of the Debtor's monthly expenditures for housing and transportation is also reflected in the timing of these obligations.

---

4

This includes both operating and ownership costs.
http://www.usdoj.gov/ust/eo/bapcpa/20080317/bci_data/IRS_Trans_Exp_Stds_MW.htm.

Page 9

In re: Stacee Violanti
Case No. 08-33329

The Debtor purchased her present residence in the middle of 2007, while the Debtor purchased her vehicle in March of 2008. The obligations attendant to these purchases were thus incurred in the lead up to the Debtor's bankruptcy, with the Debtor filing her Chapter 7 petition for relief in June of 2008. Based, therefore, upon the timing of these events, a rational inference arises that, at the time she made the purchases for her home and vehicle, the Debtor was subjectively aware of her declining financial situation. However, instead of seeking to place her spending under control, the Debtor made unnecessary purchases which further strained her budget.

Such eve of bankruptcy purchases are not viewed favorably. *In re Krohn*, 886 F.2d 123, 126 (6th Cir.1989) (factors which a court may consider under § 707(b) are whether the debtor engaged in eve of bankruptcy purchases). This is even more true, considering that the Debtor's income has remained relatively constant throughout these events. A strong factor mitigating against abuse is, therefore, absent: the Debtor's financial predicament cannot be said to have arisen as the result of an unexpected event. *In re Stewart*, 383 B.R. 429, 434 (Bankr. N.D.Ohio 2008) (a factor often mitigating against dismissal under § 707(b)(3) is that the events precipitating the bankruptcy arose from events beyond the debtor's control)

Rather, the Debtor's financial difficulties were precipitated, at least in large part, by her desire to purchase property which was beyond her ability to pay, with the Debtor then, through her stated intention to reaffirm on her home and vehicle obligations, seeking to impermissibly use the bankruptcy process to retain this property to the direct detriment of her unsecured creditors. The bankruptcy process, however, was never "meant to be used as a means by which a debtor can perpetuate bad financial decisions." *In re Kaminski*, 387 B.R. 190, 196 (Bankr. N.D.Ohio 2008). Nor was bankruptcy meant to be used as a financial tool for a debtor to incur additional secured debt to the detriment of the debtor's unsecured creditors. *In re Gonzalez*, 378 B.R. at 176.

Page 10

**In re: Stacee Violanti**
**Case No. 08-33329**

In sum, the Court has before it a Chapter 7 debtor whose financial situation perfectly fits the mold of a case warranting dismissal under § 707(b)(3)(B). First, the Debtor has the benefit of stable employment through which she is able to earn a substantial salary – approximately $100,000.00 annually. But as this Court has noted when applying § 707(b)(3): "Under any measure, a debtor, having a stable annual salary of almost $100,000.00, will be hard pressed to establish that they do not have the ability to pay some of their unsecured debt, such as through funding a Chapter 13 plan of reorganization." *In re Wadsworth*, 383 B.R. 330, 334 (Bankr. N.D.Ohio 2007). In addition, the budgetary figures provided by the Debtor are not reasonable, particularly those expenses the Debtor sets forth for housing and transportation. Furthermore, the impropriety of these expenses is especially acute given that the Debtor incurred the obligations underlying her housing and transportation expenses during the time period leading up to her bankruptcy filing.

Accordingly, for these reasons, it is the finding of this Court that the Debtor, by making adjustments to her monthly budget, has the means by which to pay a percentage of her unsecured debts. Resultantly, the granting of relief in this case would be an abuse within the meaning of §§ 707(b)(1) and § 707(b)(3). In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Decision.

In re: Stacee Violanti
Case No. 08-33329

Accordingly, it is

**ORDERED** that the Clerk, United States Bankruptcy Court, is directed to prepare for presentation to the Court an order of dismissal under 11 U.S.C. § 707(b)(1) if, at the opening of business on Monday, November 17, 2008, this case is still proceeding under Chapter 7 of the United States Bankruptcy Code.

**IT IS FURTHER ORDERED** that, subject to the Debtor's election to convert this case, the Motion of the United States Trustee to Dismiss under 11 U.S.C. § 707(b)(1) and § 707(b)(3), be, and is hereby, GRANTED.

Dated: November 4, 2008

Richard L. Speer
United States
Bankruptcy Judge

# CERTIFICATE OF SERVICE

Copies were mailed this 4th day of November 2008 to:

Stacee K. Violanti
6125 Secluded Court
Sylvania, OH 43560

Robert A Woodley
1900 Monroe St, #102
Toledo, OH 43604

Louis J Yoppolo
300 Madison Ave, #1200
Toledo, OH 43604

Dean Wyman
Office of the US Trustee
201 Superior Aveneue, Suite 441
Cleveland, oh 44114-1240

                                              /s/Diana Hernandez
                                       Deputy Clerk, U.S. Bankruptcy Court